# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                No. CR 03-1890 JB

MICHAEL HERNANDEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed December 17, 2004 (Doc. 246). The Court held a sentencing hearing on this matter December 20, 2004. Based on the reasons stated at the sentencing, and consistent with those reasons, the Court will amend the PSR to resolve Hernandez' objections.

## FACTUAL BACKGROUND

Court records indicate that Hernandez admitted committing the offense of Possession of Marijuana Under One Ounce and that the state court found him to be a delinquent child. According to the Consent Decree filed June 2, 1998: "The Child has freely and voluntarily admitted to or declared the intention not to contest being a **delinquent child** in need of care or rehabilitation as alleged in the Delinquency Petition by committing the following delinquent act: lesser included ct 1: poss marijuana under 1 oz." The state court placed Hernandez on supervised probation for a period of six months.

The Probation Officer contacted a representative of the Children's Court Division and learned the state court had not dismissed the case. The representative stated that the state court adjudicated

Hernandez delinquent and sentenced him to a six month term of probation. Hernandez, however, presented to the Court an Order of Dismissal from the Second Judicial District Court, Children's Court Division, County of Bernalillo, State of New Mexico, dated December 17, 2004.

## PROCEDURAL BACKGROUND

Paragraphs 20 and 21 of the PSR state:

20. Pretrial Services records indicate that on February 10, 2004, the defendant reported to his Pretrial Services officer that his fiancé called the Albuquerque Police Department on February 7, 2004 and filled a report accusing him of pushing her. Furthermore, on February 18, 2004, the defendant's State probation Officer, Jack Brodeur, contacted Pretrial Services and advised that he had received a copy of a police report regarding a gang related shooting which occurred in the early morning hours of January 1, 2004. Mr. Brodeur noted the defendant and his fiancé were named in the police report as individuals who where present at the party where the shooting occurred (it is noted they were not charged with any offense). However, Mr. Brodeur indicated the defendant was in violation of his state probation because he was associated with gang members and because weapons and drug paraphernalia were confiscated from the party (Mr. Brodeur initiated revocation proceedings and the defendant was required to serve 48 hours in jail, commencing on March 16, 2004). As a result of the aforementioned incidents, the defendant was placed back on electronic monitoring on February 19, 2004.

21. On May 3, 2004, an Information Report/Request to Modify Conditions of Release, was submitted to the Court. This report indicated that on April 21, 2004, the defendant contacted his Pretrial Services officer from University of New Mexico Hospital and advised that an unknown individual had taken four shots at him, hitting the defendant once in his left arm. Based on his non-compliance, his related gang affiliations coupled with the aforementioned shooting, Pretrial Services recommended that the defendant be placed at the La Pasada Halfway House in Albuquerque, New Mexico. The Court adopted the recommendation of Pretrial Services and on May 4, 2004, the defendant arrived at the La Pasada Halfway House. As of this writing, he continues to reside at La Pasada and he is in compliance with all program rules and policies. Furthermore, he has maintained steady employment throughout his stay at the halfway house and attends weekly substance abuse counseling sessions at The Evolution Group.

Paragraphs 105, 111, and 115 state:

105.   According to agents, the investigation revealed that at one point, **Michael Hernandez** was Nunez' main runner and "right hand man." On August 28, 2002, in Call B648, **Hernandez** and Nunez had a conversation about Nunez' friends. Nunez then asked **Hernandez** how much "she" gave **Hernandez** the other day. **Hernandez** said it was 900. The next day, August 29, 2002, in Call A 373, **Hernandez** called and "YoYo" Aguilar answered. **Hernandez** said he was waiting for Nunez and asked if Aguilar knew whether Nunez had anything for **Hernandez**. Aguilar said he would ask Nunez. Then, from Calls A384 and B738 later that evening, it appears that Nunez met with **Hernandez**. On September 3, **Hernandez** called Nunez several times, reaching voice mail each time. He finally asked Nunez to call him. The next day, September 4, 2002, after several more attempts to reach Nunez, **Hernandez** left another message asking Nunez to call, saying it was already Wednesday and he had it all set for yesterday.

\* \* \* \*

111.   Jose Refugio Aguilar and Gerald Marcos Trujillo were identified as Nunez' two main runners. Aguilar often carried one of Nunez' cellular phones and he and Nunez were in constant contact about social activities and the drug business. Trujillo was also in constant contact with Nunez regarding social activities and the drug business. Agents noted both Aguilar and Trujillo would deliver cocaine and pick up money, at Nunez' direction. Agents also learned both Aguilar and Trujillo had their own crack cocaine businesses on the side. Based on the offense conduct, it is determined Jose Refugio Aguilar is accountable for 563.1 net grams of cocaine base. This figure includes 357.9 grams of cocaine base sold on September 23, 2002; and 205.2 grams sold on October 1, 2002. During both transactions, it appears Aguilar was assisting and working under the direction of Jose Nunez. It is noted Jose Refugio Aguilar also engaged in several telephone conversations in which drug quantities and transactions were discussed. However, based on the information available, additional drug quantities could not be determined.

\* \* \* \*

115.   **Michael Hernandez**, who was identified as being Nunez' former "right hand man," engaged in several telephone conversations with Nunez regarding drug transactions and quantities. The Plea Agreement as to **Michael Hernandez**, stipulates he is accountable for between four and five grams of cocaine base.

Paragraphs 118 and 123 provide:

-3-

118. The defendant submitted the following written statement to the United States Probation Office:

 "I am writing to acknowledge my responsibility for my actions to which I recently pled guilty. I had a telephone call with Jose Nunez Cabrera on approximately 29, 2002. I called Mr. Nunez Cabrera, but spoke to Refugio "YoYo" Aguilar in order to help me to obtain a small quantity of crack cocaine which I planned on selling in order to support my drug habit. I was, at the time, addicted to heroin and was using this illegal means to obtain funds to purchase heroin. I was not part of the organization operated by Jose Nunez Cabrera, and was not aware of the manner in which it operated. I knew that Mr. Nunez Cabrera was a drug dealer and I went to him to get small amounts of crack cocaine. The only activity I engaged in with him was to buy crack cocaine to resell to support my drug habit. He did not arrange for customers, dictate deliveries, control prices or do anything at all for me or with me to assist me in selling these small quantities of crack cocaine to support my habit. I have attended classes and participated in programs which have assisted me in avoiding drug usage and I am no longer a drug user."

 /s/ Michael Hernandez

 * * * *

123. **Role Adjustment:** The introductory commentary to Part B, Role in the Offense, states that "the determination of the defendant's role in the offense is to be made on the basis of all conduct within the scope of Section 1B1.3 (Relevant Conduct)." The determination of whether to apply a reduction is dependent on the facts of the particular case. At this point, there is no information to suggest the defendant had an aggravating or mitigating role in the instant offense. Agents noted that Hernandez previously worked as Nunez' "main runner" or "right hand man." However, from the telephone conversations the defendant had with Nunez, it appears Hernandez was seeking to obtain crack cocaine that he could sell on his own. In his acceptance of responsibility statement, the defendant admitted he sought to obtain crack cocaine from Nunez so he could sell crack cocaine on his own, in order to supply his drug addiction. Hernandez stated, "The only activity I engaged in with him was to buy crack cocaine to resell to support my drug habit." The defendant related he was not working under the direction of Nunez or anyone else in the conspiracy. Therefore, based on this assessment, a role adjustment does not appear warranted. However, in compliance with the Plea Agreement, the defendant will be granted a four level reduction for being a minimal participant in the underlying conspiracy.

Paragraph 128 states:

| | **Date of Referral** | **Conviction/ Court** | **Date Sentenced/ Disposition** | **Guideline Section** | **Point** |
|---|---|---|---|---|---|
| 128. | 04-28-98 (Age 16) | Possession of Marijuana (under 1 once); Second Judicial District Court, Children's Court Division, Bernalillo County, Albuquerque, New Mexico, Case No. JR 98-1339 | 06-02-098: 6 month Consent Decree | 4A1.1(c) | 1 |

The defendant was represented by counsel. Court records indicate that on April 28, 1998, a Petition was filed naming the defendant and charging him with possession of a Controlled Substance (Marijuana) With Intent to Distribute While Within a Drug-Free School Zone. The Petition alleged that on March 2, 1998, the defendant was in a drug-free school zone when he had marijuana in his possession and he intended to transfer it to another. Records indicate that on June 2, 1998, the defendant admitted to the lesser included offense of Possession of Marijuana (under 1 ounce) and the same date, he received the above-captioned sentence. No information was available regarding the defendant's adjustment to supervision.

Paragraphs 130, 132, and 133 of the PSR states:

| | | | | | |
|---|---|---|---|---|---|
| 130. | 05-24-99 (Age 17) | Possession of Marijuana; Second Judicial District Court, Children's Court Division, Bernalillo County, Albuquerque, New Mexico, Case No. JR 99-1074 | 10-20-99:Probation for a period not to exceed 2 years under Intensive Supervision program  12-27-99: Petition to Revoke Probation  01-06-00: Defendant admitted violation; sentenced to 1 year commitment | 4A1.1(b) | 2 |

<u>01-05-01</u>:
Discharged

The defendant was represented by counsel. Court records indicate that on May 24, 1999, a three-count Petition was filed naming the defendant and charging him Possession of a Controlled Substance (Marijuana) With Intent to Distribute, Evading an Officer, and Driving the Wrong Way. The Petition alleged that on May 21, 1999, the defendant was found to be in possession of marijuana and he attempted to evade police officers.

On October 20, 1999, the defendant admitted committing the lesser included offense of Possession of Marijuana. The remaining counts of the Petition were dismissed. On the same date, he was ordered placed on intensive supervised probation for a period not to exceed two years. On December 27, 1999, a Petition to Revoke Probation was filed as the defendant committed new offenses on December 22, 1999. According to the Petition to Revoke Probation, the defendant committed the offenses of Auto Burglary, Conspiracy to Commit Auto Burglary, Receiving Stolen Property and Eluding an Officer, all occurring on December 22, 1999. On January 6, 2000, the defendant admitted he committed the offense of Conspiracy to Commit Auto Burglary. The remaining counts were dismissed. At that time, the defendant was ordered committed to the custody of the New Mexico Children, Youth, and Families Department (CYFD) for a period of one year. Records indicate the defendant was received at the New Mexico Boys School in Springer, New Mexico on May 10, 2000. He was then transferred to the Eagles Nest Reintegration Center in Eagles Nest, New Mexico, on August 16, 2000. The defendant was then discharged from CYFD custody on January 5, 2001.

\* \* \* \*

| | | | | | |
|---|---|---|---|---|---|
| 132. | 03-02-01 (Age 18) | Auto Burglary; Second Judicial District Court, Bernalillo County, Albuquerque, New Mexico, Case No. JR CR2001-2932 | <u>10-21-02</u>: 18 months confinement (suspended); 5 years probation, plus 2 years parole (if incarcerated at any time) | 4A1.1(a)(2) | 0 |

The defendant was represented by counsel. Albuquerque Police Department records indicate that on March 2, 2001, a witness heard a car alarm and when he opened his curtain, he observed the defendant and another male running from the scene. The car

owner advised officers that someone had unlocked the passenger door and the center console lid in her vehicle had been opened. She also advised her purse, with numerous personal items, had been taken from the vehicle and it appeared that her car stereo had been tampered with. During post-arrest interviews, both the defendant and the other subject, denied any involvement in the burglary. A subsequent investigation revealed that on March 2, 2001, the defendant and another subject had broken into a total of four vehicles and they took numerous items, including car stereos, CD's, speakers, and an amplifier. The defendant was found to have burglary tools, including pliers and screwdrivers.

Court records indicate that on October 22, 2001, a New Mexico Grand Jury returned a 9 count Indictment, naming the defendant and charging him with four counts of Auto Burglary, three counts of Larceny, Possession of Burglary Tools, and Conspiracy to Commit Auto Burglary. On August 14, 2002, the defendant pleaded guilty to a single count of Auto Burglary and the remaining counts were dismissed.

| 133. | 03-03-02 (Age 19) | Residential Burglary; Second Judicial District Court of Bernalillo County, Albuquerque, New Mexico, Case No. JR CR2002-833 | 10-21-02: 3 years confinement, 5 years probation, plus 2 years parole (if incarcerated at any time) | 4A1.1(c) | 1 |

The defendant was represented by counsel. Albuquerque Police Department records indicate that on March 3, 2002, an officer responded to a Holiday Inn Express, in reference to a burglary call. Officers learned that Charles and Nancy Foote left their room for the day and when they returned, Mrs. Foote realized that her medication and a backpack was missing. Officers interviewed one of the housekeepers and learned that the defendant and another male subject approached her and stated their key was not working. They told her they were residing in room 352, so she opened the door for them (this room was registered and being occupied by the Foote's). Hernandez and the other subject went into the room and then departed the room a short while later. During a post-arrest interview, the defendant denied taking the medication or backpack from the hotel room.

Court records reflect that on March 15, 2002, a New Mexico Grand Jury returned a three-count Indictment, naming the defendant and charging him with Residential Burglary, Larceny, and Conspiracy to Commit Residential Burglary. On August 14, 2002, he pleaded No Contest to the charge of Residential Burglary and the remaining counts were dismissed. On October 21, 2002, the defendant was sentenced to 18

months imprisonment, which was suspended, and he was ordered placed [*sic*] on probation for a period of five years. According to a state probation officer, the defendant violated his probation in January 2004, by associating with gand members and by attending a party where weapons and drug paraphernalia were confiscated. The probation officer indicated the defendant has otherwise been compliant. He has been drug tested regularly since being placed on probation and has not submitted any positive urine specimens.

Defendant Michael Hernandez objects to certain paragraphs of the modified Pre-Sentence Report.

## LAW REGARDING ROLE ADJUSTMENTS

The commentary concerning minimal participant provides that this adjustment "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2 Commentary n. 4.

## LAW REGARDING DIVERSIONARY SENTENCES

Section 4.A1.2(f) of the U.S.S.G. provides:

**(f) Diversionary Dispositions**

Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

## ANALYSIS

### 1.     Paragraph 21.

Hernandez objects to paragraph 21, which references his gang affiliations. Hernandez asserts that he is not a gang member and has not been a gang member. Hernandez contends that the Court

should remove the reference to Hernandez' gang affiliations.

The Probation Officer responded to this objection by referring to the location in reports from whence he derived the information. The Pretrial Officer derived the information in this section from other reports that Pretrial Services prepared. According to a memorandum entitled "Information Report/Request Modify Conditions of Release," dated May 3, 2004, "[t]he defendant's non-compliance, his related gang affiliations coupled with the recent incident which involved him being shot demonstrates a need for more oversight and a more structured environment." Hernandez' state probation officer reported that he violated his probation by associating with gang members and by attending a party where drug paraphernalia and weapons were confiscated.

Hernandez contends that the reference to "related gang affiliations" in the report may relate to the occasion when he was shot in the arm by an unknown assailant, who has not yet been apprehended, in what appears to be a road rage incident. Hernandez also contends that the references to gang affiliations appear to refer to his brother's affiliation with Rollerz Only, a car club that an Albuquerque Police Sergeant considers to be a gang because two or more of its members have been arrested.

The Probation Officer derived this information from reports that Pretrial Service prepared. The Probation Officer justifies the incorporation of this information by stating that it appears relevant to Hernandez' conduct, but that response does not squarely meet Hernandez' objection. Hernandez contends that the only information which is relevant is the information in paragraph 20, to which he did not object through the Probation Office or in Court.

While the information in paragraph 21 has some relevance, it has limited relevance. At most, it shows that Hernandez went to a party where gang members were present when he was prohibited

from associating with gang members. That contraband was confiscated at the party does not have a direct bearing on Hernandez' conduct because he was not charged with any crime arising out of that incident. The state probation office's 48 hour lockup without hearing under its STEPS program is not an adequate adjudication of any misconduct.

At the sentencing, both Hernandez and the United States' agreed to a modification of paragraph 21's language that resolved Hernandez' objection to that portion of the PSR. See Transcript of Sentencing Hearing at 10:5-15 (taken December 20, 2004).[1] As agreed upon at the hearing, the Court modifies paragraph 21 in the PSR, replacing "his related gang affiliations" with "his association with gang members, coupled with the aforementioned shooting." Transcript at 10:6-7.[2]

### 2. **Paragraphs 105 and 115.**

Hernandez objects to paragraphs 105 and 115, which note that he was Nunez' main runner and "right hand man." Hernandez contends that the information in these paragraphs concerning him being Nunez' "main runner and right hand man" is false. Hernandez asserts that a person identified in the search warrant as CS2 apparently provided this information. Hernandez argues that the United States was not able to establish this fact, and the assertion in the PSR is false.

The Probation Office represents that it derived this information from discovery material which contained reports that investigating agents prepared. The United States Attorney's Office provided this information to the Probation Office. Those documents reveal that, during the course of the investigation, agents learned that, at one point, Hernandez worked as Nunez' main runner and "right

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

[2] At the hearing, Hernandez conceded that there was no objection to paragraph 20. See Transcript at 10:16-18.

hand man." Because the Probation Office relied upon materials from the united States, the Probation Office defers to the United States Attorney's Office, stating that it is in a better position to respond to this objection.

From the surveillance and other evidence that the PSR contains, it appears Nunez' "right hand man" was Refugio Aguilar, a/k/a "YoYo." Hernandez contends that he was not a runner for Nunez. Paragraph 111 identifies the two main runners for the organization. Paragraph 111 does not include Hernandez.

The Court directed the United States to produce CS2 for an in camera interview by the Court. See Order, filed September 28, 2004 (Doc. 218). The United States did not do so, representing that he is not available. Hernandez requests an evidentiary hearing at which the Court should require Nunez to be present. Hernandez represents that, pursuant to his plea agreement, Nunez has agreed to testify. Hernandez asks that the Court require the Probation Office to produce the information upon which it relied.

At the sentencing, the United States did not object to the Court's proposal of omitting the entire first sentence of paragraph 105. See Transcript at 12:10-13; Presentence Report ¶ 105 ("According to agents, the investigation revealed that at one point, **Michael Hernandez** was Nunez' main runner and "right hand man.""). Moreover, the United States represented to the Court that, upon review of its evidence, the telephone conversation mentioned in the following two sentences of paragraph 105 did not involve Hernandez. See Transcript at 12:17 - 13:8. Accordingly, the Court struck the following language as well from paragraph 105: "On August 28, 2002, in Call B648, **Hernandez** and Nunez had a conversation about Nunez' friends. Nunez then asked **Hernandez** how much 'she' gave **Hernandez** the other day. **Hernandez** said it was 900." Hernandez did not have

any objection to this change. See Transcript at 13:13-15.

In regard to paragraph 115, both parties agreed to removing the language "who was identified as being Nunez' former 'right hand man,'" which took care of Hernandez' objection to paragraph 115. See id. at 13:16-22.

### 3. **Paragraph 123.**

With regard to PSR's paragraph 123, Hernandez asserts he was a minimal participant in the offense, as he was not working under Nunez' direction or anyone else's direction. Again, Hernandez contends that the notation that he previously worked as Nunez' "main runner" or "right hand man" is inaccurate and disputes those comments. Hernandez contends that the minimal role adjustment is appropriate and that the Court should modify the PSR to so reflect. Hernandez asks the Court to remove the PSR's comment that this adjustment is inappropriate. Hernandez is concerned that the Probation Office's refusal to remove this comment may cause the Court to decline to accept the stipulation, which may cause Hernandez to attempt to withdraw from the plea agreement.

Hernandez contends that he played a minimal role in the conspiracy and, therefore, should receive a role adjustment under the Sentencing Guidelines. Section 3B1.2(b) provides an offense level decrease of four points "[i]f the defendant was a minimal participant in [the] criminal activity." U.S.S.G. § 3B1.2(b). The United States Sentencing Commission amended § 3B1.2 in 2001 to include, in relevant part, the following commentary:

> 3. Applicability of Adjustment.--
>
>   (A) Substantially Less Culpable than Average Participant. -- This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.

-12-

> A defendant who is accountable under 1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under 1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

U.S.S.G. § 3B1.2 Commentary n. 3(A). The Sentencing Commission explained:

> **Reason for Amendment:** This amendment resolves a circuit conflict regarding whether a defendant who is accountable under 1.3 (Relevant Conduct) only for conduct in which the defendant personally was involved, and who performs a limited function in concerted criminal activity, is precluded from consideration for an adjustment under § 3B1.2 (Mitigating Role). Compare United States v. Burnett, 66 F.3d 137 (7th Cir. 1995) ("where a defendant is sentenced only for the amount of drugs he handled, he is not entitled to a § 3B1.2 reduction"), with United States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999) (a defendant is not automatically precluded from consideration for a mitigating role adjustment in a case in which the defendant is held accountable solely for the amount of drugs he personally handled). Although this circuit conflict arose in the context of a drug offense, the amendment resolves it in a manner that makes the rule applicable to all types of offenses.
>
> The amendment adopts the approach articulated by the Eleventh Circuit in United States v. Rodriguez De Varon . . . that § 3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under 1.3 solely for the amount of drugs the defendant personally handled. In considering a § 3B1.2 adjustment, a court must measure the defendant's role against the relevant conduct for which the defendant is held accountable at sentencing, whether or not other defendants are charged.
>
> In contrast to the holding in United States v. Burnett, . . . this amendment allows the court to apply traditional analysis on the applicability of a reduction pursuant to § 3B1.2, even in a case in which a defendant is held liable under 1.3 only for conduct (such as drug quantities) in which the defendant was involved personally.
>
> The substantive impact of this amendment in resolving the circuit conflict is to provide, in the context of a drug courier, for example, that the court is not precluded from considering a § 3B1.2 adjustment simply because the defendant's role in the offense was limited to transporting or storing drugs, and the defendant was accountable under § 1B.3 only for the quantity of drugs the defendant personally

-13-

transported or stored. The amendment does not require that such a defendant receive a reduction under § 3B1.2, or suggest that such a defendant can receive a reduction based only on those facts; rather, the amendment provides only that such a defendant is not precluded from consideration for such a reduction if the defendant otherwise qualifies for the reduction pursuant to the terms of § 3B1.2.

****

. . . For a reduction to apply, the court, at a minimum, must make a factual determination that the defendant's role was significantly less culpable than the average participant.

U.S.S.G. Amendment 635 (November 1, 2001).

As the Court has already found, there is not sufficient evidence, if any, for the Court to conclude that Hernandez was the major participant's right hand. Rather, the telephone calls outlined in the PSR reflect that Hernandez' role was as he has described it, and that he was not knowledgeable about the enterprise's scope and structure or of others' activities in the enterprise. The evidence before the Court indicates that Hernandez knew only that, as he explains in his acceptance of responsibility, he was making purchases of very small quantities to sell to support his habit. The Court, based on its observations of Hernandez' conduct compared to that of others involved in the conspiracy, finds that Hernandez is a substantially less culpable than average participant and is entitled to a role adjustment under § 3B1.2(b). See Transcript at 19:15-22.

This finding is not undercut by the fact that Hernandez only plead guilty to "four (4) grams but less than five (5) grams" of cocaine base. Plea Agreement ¶ 8(d), at 6 (entered into September 20, 2004). As the commentary to -- and the reason for amending -- § 3B1.2 clarify, the role adjustment for being a minimal participant in the conspiracy is available to Hernandez even though he only pled guilty to the amount of drugs in which he was personally involved. The Court, having made the factual determination that Hernandez is a minimal participant, will therefore accept the

stipulation in the plea agreement and apply a role adjustment under § 3B1.2. <u>See</u> Plea Agreement ¶ 7(b), at 5; Transcript at 19:23 - 20:1.

Accordingly, the Court will strike the third, fourth, and ninth sentence. <u>See</u> Presentence Report ¶ 123 ("At this point, there is no information to suggest the defendant had an aggravating or mitigating role in the instant offense. Agents noted that Hernandez previously worked as Nunez' 'main runner' or 'right hand man.' . . . Therefore, based on this assessment, a role adjustment does not appear warranted."). This amendment resolves Hernandez' objection to paragraph 123, and the United States had no objection to this alteration of the PSR. <u>See</u> Transcript at 19:25 - 20:10.

**4.     Paragraph 128.**

Hernandez asserts that he should not receive a criminal history point for the conviction in paragraph 128, because he received a Consent Decree, which New Mexico law does not consider a juvenile adjudication. <u>See</u> NMSA 1978 § 31-18-15.2B(2)("[S]uccessful completion of consent decrees is not considered a prior adjudication for purposes of this paragraph."). The judgment was a six-month consent decree. Hernandez' alleges that the six-month consent decree does not qualify as a sentence in § 4A1.1(c). Hernandez contends that the consent decree is a diversionary disposition and that, under § 4A1.2(f) as a juvenile court diversion, the federal guidelines do not count it. There was no finding of guilt, and the entry into this consent decree does not operate as an adjudication under state law. Hernandez argues that the federal law should give due deference to the state determination that it is not an adjudication.

In the PSR, the Probation Office relies upon the state court's finding or Hernandez' admission of guilt, but does not base its conclusion on a review of the proceedings. At the sentencing hearing, however, Hernandez presented the Order of Dismissal, which was filed by the state court on

December 17, 2004. In light of the Order of Dismissal, the Court concludes that Possession of Marijuana offense in paragraph 28 is a diversionary disposition that does not warrant the one-point increase in the criminal history category. See Transcript at 20:12-22; U.S.S.G. §§ 4A1.1(c), 4A1.2(f). The United States does not object to this finding. See id. at 20:23 - 21:1.

Accordingly, the Court modified the First Addendum to the Presentence Report, page two, in the Response to Objection #4 by omitting the following language: "The probation office maintains that one criminal history point was appropriately applied to the adjudication in paragraph 128 of the presentence report. . . . There is no indication that the Petition was ever dismissed in this case. The probation officer contacted a representative of the Children's Court Division and learned this case was never dismissed." The Court added the following language at the end of the same paragraph: "An Order of Dismissal with prejudice without a finding of guilt was entered on December 17, 2004." The Court also omitted the language in the next paragraph, "Defense counsel asserts" and "and thus the adjudication was not withheld. Based on this assessment, the probation office maintains its position as it appears in the presentence report." In light of this change to the addendum, Hernandez withdrew its objection to paragraphs 130, 132 and 133. See Transcript at 22:13-21.[3]

**IT IS ORDERED** that the abovementioned changes to the PSR in response to the Defendant's objections are sustained. With 8 total criminal history points, his sentence will be consistent with a Criminal History of IV.

---

[3] In regard to Hernandez' other objections, the Court satisfied those at the hearing by moving the charge listed in paragraph 136, page 37, of the PSR under "Other Arrests" to page 38 under "Other Criminal Conduct." Moreover, at the hearing, Hernandez clarified that his objection to paragraph 169 was actually an objection to the criminal history point calculation contained in paragraph 135. The Court made the appropriate adjustment to the criminal history points, from 9 points to 8 points, resulting in the same criminal history category of IV.

```
                              _____
                              UNITED STATES DISTRICT JUDGE
```

*Counsel:*

David Iglesias
  United States Attorney
Erlinda Johnson
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the United States*

Ray Twohig
Ray Twohig, P.C
Albuquerque, New Mexico

    *Attorney for the Defendant*